IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LYNETTE CASTILLO, *et al*,

Plaintiffs,

v.

KLAYMAN & TOSKES, P.A., *et al*,

Defendants.

CIVIL NO. 24-1427 (CVR) (HRV)

# REPORT AND RECOMMENDATION

On September 16, 2024, Plaintiffs Lynette Castillo, Felix M. Avilés-Franco, their conjugal partnership, Personnel Recruiting Service, Corp. (collectively, "Castillo Plaintiffs"), Salvador Jiménez, Raquel Jiménez, and their conjugal partnership (collectively, "Jiménez Plaintiffs"), individually and on behalf of all others similarly situated, filed the instant action against Defendants Klayman & Toskes, P.A. ("K&T"), Lawrence L. Klayman ("Klayman"), and Steven J. Toskes ("Toskes").[1] The operative complaint at Docket No. 48 alleges that Defendants defrauded Plaintiffs by having them pay legal fees even though Defendants were not authorized to practice law in Puerto Rico. Plaintiffs bring causes of action for fraud (count I), breach of contract (count II), damages (count III), unjust enrichment (count IV), and breach of the implied duty to act

---

[1] Plaintiffs Salvador Jiménez, Raquel Jiménez, and their conjugal partnership were added as Plaintiffs on March 7, 2025, via Plaintiffs' amended complaint at Docket No. 48.

1

in good faith (count V). Defendants have yet to answer the amended complaint. On April 11, 2025, Defendants moved the court to dismiss the amended complaint and to strike the class allegations. Docket No. 51. Plaintiffs opposed and Defendants replied. Docket Nos. 59, 72. The presiding District Judge referred the motion to dismiss to the undersigned for a report and recommendation. Docket No. 76.

## I.  FACTUAL BACKGROUND[2]

The genesis of this case dates to Puerto Rico's debt crisis and the fall of the Puerto Rico bonds and closed-end funds in 2013, specifically UBS Financial Services ("UBS")-managed bonds. Docket No. 48. As a result of this crash in the bond market, Puerto Rico bondholders lost billions of dollars invested in such securities. *Id*. at ¶ 65. Allegedly, Defendants, attorneys in the mainland, saw this as an opportunity to seek out clients who needed help seeking compensation for the loss of their investments. *Id*. ¶¶ 66-69. Defendants held at least four (4) conferences where they would allegedly give out legal advice on the possible claims and sign-up potential clients, representing that they were legal representatives specializing in securities fraud claims and the best alternative for remuneration in Puerto Rico. *Id*. ¶ 67. The Jiménez Plaintiffs signed a retainer with Defendants to take their claim to the Financial Industry Regulatory Authority ("FINRA") against UBS on March 16, 2015, after being oriented in and around February 2015. *Id*. ¶

---

[2]  The allegations are taken from Plaintiffs' amended complaint. Docket No. 48. Furthermore, the parties have attached several documents in support of their respective positions. The Court may consider these documents in making its determination. *See Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 622-23 (1st Cir. 2019).

2

80. The claim was filed in August 2015, after the Jimenéz Plaintiffs signed the approval of the Statement of Claim. *Id.*

On December 20, 2017, Toskes sent a letter to the Jimenéz Plaintiffs stating that, in his opinion, they did not have a strong case to take to an arbitration hearing. *Id.* ¶¶ 81-85. After some back and forth and several mediation sessions, Defendants allegedly told the Jiménez Plaintiffs that they would not take their case to a final hearing if they did not accept a settlement offer for approximately $200,000. The Jiménez Plaintiffs did not accept the offer and terminated Defendants' legal representation. *Id.* ¶ 85. At some point in 2018, given some struggles to obtain their case file, the Jiménez Plaintiffs filed an ethical complaint before the Supreme Court of Puerto Rico ("SCPR"), where they allegedly found out that neither Klayman nor Toskes had applied for courtesy bar admission in Puerto Rico. *Id.* ¶¶ 86-87.

On January 25, 2018, Defendants claimed that they were owed $60,000 in contingent legal fees over the settlement offer of $200,000.00 and $14,394.20 for costs. *Id.* On March 1, 2018, Defendants sent a letter to FINRA together with a charging lien for fees owed. *Id.* ¶ 88. On March 21, 2018, the Jiménez Plaintiffs' new attorney sent a letter to Defendants stating that they were not going to pay any fees because Toskes and Klayman had not requested *pro hac vice* admission before the SCPR to represent the Jiménez Plaintiffs before FINRA. *Id.* ¶ 89. On August 11, 2023, the Jiménez Plaintiffs delivered a letter with a check to Defendants' office, which was rejected because Klayman allegedly instructed not to accept less than $74,000 for the rendered services. *Id.* ¶ 93.

The Castillo Plaintiffs allege that the same thing that happened to the Jimenez Plaintiffs, happened to them. They signed a retainer with Defendants in 2015 to take

3

their claim against UBS to FINRA. *Id.* ¶ 98. Defendants allegedly wrote a letter to the Castillo Plaintiffs on February 1, 2019, which summarized the history of the appointed arbitration panel, and that the case had a great number of weaknesses and disadvantages. *Id.* ¶ 99. After two mediation sessions, one which did not include the Castillo Plaintiffs, they were summoned to a meeting with Defendants at the offices of Puerto Rico attorney Osvaldo Carlo. However, Plaintiffs allege that when they arrived at the meeting, they realized that attorney Carlo was not there but instead, the only person present was Toskes. At said meeting, Toskes allegedly stated that if the Castillo Plaintiffs did not agree to the settlement offer of $245,000.00, they had to seek new representation. *Id.* ¶¶ 104-107. Mrs. Castillo broke down in tears. Although the Castillo Plaintiffs entered the settlement agreement, they allege they gave in due to Mrs. Castillo's health condition and the pressure from Defendants. *Id.* ¶ 112. Defendants charged $68,502.00 in attorney fees plus expenses, which they retained after receiving the settlement reimbursement. *Id.* ¶¶ 114-115. Plaintiffs contend that Defendants' conduct towards them was repeated with all those similarly situated.

## II. APPLICABLE LAW AND DISCUSSION

### A. Legal Framework - Motion to Dismiss

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the pleadings. To survive a motion to dismiss under Rule 12(b)(6), a complaint must establish "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007); Fed. R. Civ. P. 12 (b)(6). A claim is plausible when the factual averments allow for "a reasonable inference that the defendant is liable for the misconduct alleged."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). In considering a motion to dismiss under Rule 12(b)(6), the Court must accept the well-pleaded factual allegations in the complaint as true and resolve all inferences in favor of the plaintiffs. *Mississippi Pub. Employees' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 85 (1st Cir. 2008); *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008).

**B.     Fed. R. Civ. P. 9(b)**

Fed. R. Civ. P. 9(b) mandates that a party alleging "fraud or mistake, must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under Rule 9(b), the pleading party must allege with particularity the time, place, and content of the challenged misrepresentations, omissions, or fraud. *Ponsa-Rabell v. Santander Securities LLC*, 35 F.4th 26, 33-34 (1st Cir. 2022). Indeed, the "particularity" element requires a party to provide additional details that are not required for general pleadings pursuant to Fed. R. Civ. P. 8, including to "specify the who, what, where, and when of the allegedly false or fraudulent misrepresentation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).

**C.     Analysis**

   ***1.     Class Allegations***

Before delving into their specific grounds for seeking dismissal pursuant to Rule 12(b)(6), Defendants move to strike the amended complaint's class action allegations.[3]

---

[3]     Defendants acknowledge that Plaintiffs have not yet moved for class certification.

Docket No. 51 at pp. 7-19. In a nutshell, Defendants contend that the Court may rule on this issue because the nature of the claims and the case development will not alter the "central defect" in the class action claims. Defendants argue that individualized factual inquiries predominate in the instant action, foreclosing the possibility of a class action. Plaintiff widely oppose decertifying the class at this juncture because the class complies with all the requirements of Federal Rules of Civil Procedure Rule 23, i.e., numerosity, commonality, typicality, and adequacy of representation. And that there is no individualized inquiry required because "[e]very person who the Defendants purported to represent was injured in the same fashion: each person paid attorneys' fees to a law firm and to attorneys who were not authorized to practice law in Puerto Rico" and the "calculation of each Plaintiff's damages is a [sic] simple as finding out the amount each Plaintiff paid Defendants for representing each of them with no authority." Docket No. 59 at p. 14.

      Here, both parties spent considerable effort arguing in favor of their respective positions regarding the class action allegations. In light of the case-dispositive findings and recommendations below, the undersigned declines to address this matter because, ordinarily, this issue comes up in the context of a formal request for class certification.[4] *See College of Dental Surgeons of Puerto Rico v. Connecticut General Life Ins. Co.*, 585

---

[4]    To be sure, each parties' briefs discussed class certification in detail. However, the Court is aware that Plaintiffs have yet to define the proposed class. *Compare* Docket No. 48 at ¶ 12 with ¶ 118. And Plaintiffs have not ascertained the class's numerosity. *See* Docket No. 59 ("Here, the potential number of plaintiffs is between 500 and 800 easily exceeds the threshold of 40 potential plaintiffs."). Assuming the case survives dismissal, the Court forewarns Plaintiffs that if an individual factual inquiry predominates this litigation, the class is not likely to get certified. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3156596, at 3-4 (M.D. Fl. Aug. 3, 2012).

F.3d 33, 40-43 (1st Cir. 2009) ("the existence vel non of a sufficiently defined class is appropriately addressed after some development of the facts and under Rule 23's established protocol for weighing the propriety of class certification. … [R]eviewing a complaint alone is not normally a suitable occasion for determining whether the plaintiff has sufficiently defined a cognizable class. Whether or not [Plaintiff] will succeed in satisfying the requirements or Rule 23 is not before us. That is a question for the district court **at the class certification stage**.").

### 2. *Subject Matter Jurisdiction: Threshold Jurisdictional Amount*

Defendants request that the Court dismiss the case since Plaintiffs have failed to plausibly plead damages exceeding $75,000.00, the threshold amount required under the law. Defendants first argue that the seven-figure sums "reflect aggregate damages" suffered by the putative class, which has not been certified, and as such, this Court must look at the claims brought solely by the named Plaintiffs: the Castillo Plaintiffs and the Jiménez Plaintiffs. Docket No. 51 at pp. 25-26. According to Defendants, Plaintiffs allege in the amended complaint that the damages suffered arise from paying improper attorney fees. Moreover, Defendants point out that the Jiménez Plaintiffs never paid Defendants for the services rendered, and the Castillo Plaintiffs paid approximately $68,000.00, which is less than the jurisdictional threshold amount. *Id.*

On the other hand, Plaintiffs, who bear the burden to show that the amount in controversy meets the jurisdictional requirement, have remained silent as to this issue, resulting in waiver. *See United States v. Zaninno*, 895 F.2d 1, 17 (1st Cir. 1990); *Martínez v. Law Offices of John F. Nevares & Associates, P.S.C.*, 432 F. Supp. 3d 31, 33 (D.P.R.

Jan. 10, 2020). Regardless, as I explain below, it is evident from the allegations in the amended complaint that subject matter jurisdiction is lacking.

Federal courts are courts of limited jurisdiction. *Burgos-Bloom v. Municipality of Río Grande*, 2008 WL 11501552, at *1-2 (D.P.R. Mar. 27, 2008). In the present case, Plaintiffs assert federal subject matter jurisdiction through 28 U.S.C. § 1332 (a)(1) and (c) based on diversity of citizenship.[5] Docket No. 48 ¶ 8. Under said statute, district courts have original jurisdiction over all civil actions in which the amount in controversy exceeds $75,000.00 and the dispute is between "citizens of different States" or between "citizens of a State and citizens of a foreign state." 28 U.S.C. § 1332(a)(1)-(2). To invoke diversity jurisdiction, a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). Plaintiffs bear the burden of showing that the actual amount in controversy exceeds the threshold jurisdictional minimum. *See Duchesne v. American Airlines, Inc.*, 758 F.2d 27, 28 (1st Cir.1985) (quoting *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)).

As to the matter in controversy language, section 1332 has been interpreted "to require that each plaintiff individually satisfy the amount in controversy." *Garcia v. Municipality of Orocovis*, 356 F. Supp. 2d 87, 91 (D.P.R. 2005). Again, Plaintiffs bear

---

[5] The Class Action Fairness Act ("CAFA") provides jurisdiction for class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity between plaintiffs and defendants. 28 U.S.C. § 1332(d). In cases where plaintiffs assert CAFA jurisdiction, the court may treat the complaint as asserting a class action, even if not yet certified, and consider the putative class members in determining the amount in controversy. *Cooper v. Charter Communications Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014). Plaintiffs do not assert federal subject matter jurisdiction through the CAFA. As such, CAFA is inapplicable in this case.

that burden. *Id*. First Circuit caselaw is clear that "[t]he usual rule in class actions is that to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims." *Pruell v. Caritas Christi*, 645 F.3d 81, 83 (1st Cir. 2011). And, generally, that "is the rule in determining whether diversity of citizenship exists, whether the amount in controversy is established, whether a plaintiff has standing and whether the controversy has become moot." *Id*. at 84. As alleged in the amended complaint, Plaintiffs' damages exceed the $75,000.00 threshold (for example, $24,000,000 for the fraud allegations; $1,000,000 for damages pursuant to state law; $36,000,000 for unjust enrichment). But those seven-figure sums reflect the aggregate damages allegedly suffered by the class, which has not been certified by the Court. *See id*. at 84 ("the class members other than the named plaintiffs are merely potential parties until subject matter jurisdiction for the named plaintiffs is established and the district court has decided to certify a class.").

Plaintiffs admit in their opposition, while discussing at length Rule 23 certification, that the "**damages suffered [by Plaintiffs] are the [attorney] fees paid**." Docket No. 59 at p. 16 (emphasis added). But, as stated in the amended complaint, the Jiménez Plaintiffs never paid the fees to Defendants, and the Castillo Plaintiffs paid $68,502.00. *See* Docket No. 48 ¶¶ 91-95, 114. This falls below the $75,000.00 threshold requirement and, thus, neither the Jiménez Plaintiffs nor the Castillo Plaintiffs meet the jurisdictional minimum for the Court to exercise its jurisdiction. *See Garcia*, 356 F.Supp.2d at 91 (each plaintiff must individually satisfy the amount in controversy); *Pruell*, 645 F.3d at 84 ("where the 'district court never had jurisdiction over the claim of the class representative ... it had no jurisdiction over the class action either even if the claims of some of the members of the class were withing its jurisdiction'") (*quoting*

*Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983)). Courts cannot interpret Rule 23 of the Federal Rules of Civil Procedure "to alter the settled rule that distinct claims cannot be aggregated to meet the amount in controversy requirement." *H&D Tire and Automotive-Hardware Inc. v. Pitney Bowes, Inc.*, 250 F.3d 302, 304 (5th Cir. 2001). Plaintiffs have presented no facts or arguments regarding this issue. Silence is acquiescence. I find that the Court lacks subject matter jurisdiction over Plaintiffs' claims and thus recommend that the motion to dismiss be GRANTED.

In the alternative, I consider Defendants' additional grounds for dismissing the case.

### 3. *The Jiménez Plaintiffs*

Defendants move for dismissal of the Jiménez Plaintiffs' claims because said claims hinge on the allegation that neither Klayman nor Toskes were admitted to practice law in Puerto Rico. Defendants say that the evidence demonstrates that Defendant Toskes had requested and obtained courtesy admission to represent individuals in FINRA proceedings, including the Jiménez Plaintiffs. Docket No. 51 at pp. 21-23. Plaintiffs again remain silent and fail to oppose Defendants' argument for dismissal. *See Zaninno*, 895 F.2d at 17. After a careful look at the record before me, I agree with Defendants that the Jiménez Plaintiffs' claims are built under an incorrect premise and must be dismissed.

At the motion to dismiss stage, courts may consider (1) "implications from documents' attached to or fairly incorporated into the complaint," (2) "facts susceptible to judicial notice," and (3) "concessions in plaintiff's response to the motion to dismiss." *Rivera v. Marriott Intl., Inc.*, 456 F. Supp. 3d 330, 336 (D.P.R. 2020) (cleaned up).

Defendants put forward exhibits from the Puerto Rico Supreme Court, which include information that prove that Defendant Toskes had received authorization to practice law in relation to the Jiménez Plaintiffs' case before FINRA. *See* Docket Nos. 51-1 - 51-4. Without converting Defendants' motion to dismiss into one for summary judgment, I find that the documents' authenticity is not disputed and stem from official public records. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). I thus take judicial notice of the following documents attached to Defendants' motion to dismiss at Docket No. 51 (certified translations at Docket No. 58): (1) Puerto Rico Supreme Court Ruling (Docket No. 58-1); (2) Informative Motion re Courtesy Admission with Puerto Rico Supreme Court stamp (Docket No. 58-2); (3) Puerto Rico Supreme Court Certification (Docket No. 58-3); (4) Puerto Rico Supreme Court Resolution dated February 22, 2019 (Docket No. 58-4).

On December 23, 2013, the Puerto Rico Supreme Court issued a ruling granting Defendant Toskes *pro hac vice* admission pursuant to Rule 12(f) of the Rules of the SCPR. Defendant Toskes was to inform the SCPR the specific cases in which he was going to appear as counsel. Docket No. 58-2. The Jiménez Plaintiffs signed a retainer with Defendant Toskes to take their claim before FINRA against UBS on March 26, 2015. Docket No. 59 at ¶ 7. On July 17, 2015, Toskes, through local counsel Osvaldo Carlo-Linares, informed the SCPR that he was going to appear in the Jiménez Plaintiffs case. As required, stamps were attached. Docket No. 58-2. Most important, on June 20, 2018, the Puerto Rico Supreme Court issued a certification where it stated that although the records did not show that Defendant Klayman requested admission by courtesy to represent the Jiménez Plaintiffs in the FINRA case, Defendant Toskes, through attorney

11

Osvaldo Carlo Linares, did so via informative motion on July 23, 2015. Docket No. 58-3. The Certification noted that the FINRA case number was missing from the informative motion. Id. The Jiménez Plaintiffs were aware of that fact because that certification was issued as part of the record in an ethical claim Plaintiffs filed against attorney Osvaldo Carlo Linares, which was dismissed by the SCPR on February 22, 2019. Docket No. 58-4; Docket No. 59 ¶¶ 8-9 (Plaintiffs admit that the Jiménez Plaintiffs filed the complaint before the Puerto Rico Supreme Court and found that Defendant Klayman had not requested admission. However, as stated above, the Jiménez Plaintiffs filed the retainer for services with Defendant Toskes.).

The undersigned has a hard time finding, even taking the allegations as true and drawing all reasonable inferences in favor of the Jiménez Plaintiffs, that Defendant Toskes was not authorized to practice law in Puerto Rico, specifically to represent the Jiménez Plaintiffs. Having based their amended complaint on the premise of their alleged damages stem from the illegal practice of the law by Defendants, specifically Defendant Toskes as it pertains to the Jiménez Plaintiffs, and remaining silent in the face of Defendants' argument for dismissal, the Jiménez Plaintiffs have failed to state any viable claim for relief, and I therefore recommend that all their claims be dismissed.

### 4. *The Castillo Plaintiffs*

As to these Plaintiffs, Defendants move to have all claims in the amended complaint dismissed with prejudice on statute of limitation grounds. Specifically, Defendants contend that the Castillo Plaintiffs' tort and common law claims are time-barred because they should have known years before the filing of the complaint that neither Defendant Klayman nor Defendant Toskes were licensed attorneys in Puerto

Rico. They now seek to salvage their untimely claims with meritless arguments for equitable tolling. Docket No. 51 at pp. 28-29. Plaintiffs briefly respond to Defendants' key arguments by stating that the applicable statute of limitations period was tolled by Defendants' fraudulent concealment through misrepresentations and omissions.

The Castillo Plaintiffs specifically assert five claims in their amended complaint, to wit, (1) fraud, (2) breach of contract, (3) damages, (4) unjust enrichment, and (5) breach of the implied duty to act in good faith. Puerto Rico substantive law applies. *See Colon v. Blades*, 717 F.Supp.2d 175, 184 (D.P.R. June 15, 2010) (when jurisdiction is based on diversity of citizenship, state substantive law applies). Statute of limitations "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." *Mun. of Bayamón v. Exxon Mobil Corp.*, 2025 WL 2630671, at *24 (D.P.R. Sept. 11, 2025) (quoting *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945)). And represent "expedients, rather than principles." *Id*. The parties agree that all the claims that accrued before 2020 are subject to the 1930 Puerto Rico Civil Code and those that accrued after November 28, 2020, are subject to the 2020 Puerto Rico Civil Code. Docket Nos. 59 at pp. 19-20; 72 at p. 6.

As to Plaintiffs' fraud (count I), tort (count III), and unjust enrichment claims (count IV), Defendants argue that they are subject to a one-year statute of limitation pursuant to Article 1868 of the 1930 Civil Code, P.R. Laws Ann. tit. 31 § 5298. *See* Docket Nos. 51 at pp. 27-29; 59 at pp. 21-23; 72 at pp. 6-8. They assert that Plaintiffs' fraud and unjust enrichment claims are noncontractual claims sounding in tort, not contract, because they do not arise from a specific obligation but from whether Plaintiffs were

"duped into entering [the retainer agreements] under false pretenses," i.e., that Defendants were not authorized to practice law in Puerto Rico. Docket No. 72 at p. 7. Plaintiffs concede as much, as they do not challenge Defendants' argument other than citing caselaw discussing the difference between contractual and noncontractual claims. *See* docket no. 59 at pp. 22-23.

I agree with Defendants that both the fraud and unjust enrichment claims, as well as the damages claim, are subject to a one-year statute of limitations. As to the breach of contract claim (count II), both parties agree that said cause of action is subject to a fifteen-year statute of limitation. But a closer look at the claim as specified in the amended complaint reveals that the breach of contract claim is really a contractual dolo claim. *See* Docket No. 48 at pp. 34-38 ("Herein, Defendants, by false representations and omissions of material facts, urged and induced Plaintiffs to execute contracts for legal representation and fees which they would not have executed without such deceit. Defendants' deceit was so serious as to the heart of the bargain, giving rise to the nullity of these contracts."); Docket No. 59 at pp. 23-24 (discussing at length dolo and Defendants' deceit). In fact, Plaintiffs fail to identify in their amended complaint and their opposition the specific provision of the retainer agreement that was allegedly breached. The statute of limitations for dolo is four years from the consummation of the contract. P.R. Laws Ann. tit. 31 § 1253; *Huongsten Production Import & Export Co. Ltd. v. Sanco Metals LLC*, 810 F. Supp. 2d 418, 427 (D.P.R. 2011). The implied duty to act in good faith claim (count V) is subject to a one-year statute of limitations as it is a noncontractual claim. Having cleared this hurdle, I consider next whether Plaintiffs' claims are time-barred.

### *a. Fraud, Tort Damages, Unjust Enrichment, and Duty to Act in Good Faith Claims*

As previously mentioned, Plaintiffs' fraud, tort damages, unjust enrichment, and duty to act in good faith claims are all subject to a one-year statute of limitation.[6] Under the 1930 Civil Code, the statute of limitations is one year from knowledge of the injury, that is, the period ordinarily begins to accrue "at the time that the aggrieved party knows (or should have known) of both his [or her] injury and the identity of the party who caused it." *González-Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 318 (1st Cir. 2009); *see also* 31 P.R. Laws Ann. § 5298 (the statute of limitations for filing a tort claim under Article 1802 commences when "the aggrieved person had knowledge thereof.").[7] A plaintiff has knowledge of the injury when he or she has notice of (1) the injury and (2) the person who caused it. *Rodríguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997).

Here, the amended complaint is silent as to the exact date when the Castillo Plaintiffs had actual knowledge of Defendants not being licensed to practice law in Puerto Rico. But, in their opposition, Plaintiffs admit that "any Statute of Limitations term did not accrue until [sic] Supreme Court of Puerto Rico certified that defendants

---

[6]  As to the fraud claim, Plaintiffs submit that the fraudulent misrepresentations began "in or around April 2014" and continued "as recently as June 14, 2023." The Court notes that the amended complaint contains no specific allegation dating to 2023. In any event, Plaintiffs are trying to introduce a continuing violation doctrine argument, which was developed in the amended complaint and/or the opposition to Defendants' motion to dismiss.

[7]  Article 1536 replaced Article 1802 when the new Puerto Rico Civil Code came into effect in 2020. Article 1536 contains the same elements as its predecessor. All caselaw analyzing Article 1802 "remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020." *Dumanian v. FirstBank of Puerto Rico*, 2024 WL 197429, at p. 3 n.4 (D.P.R. Jan. 17, 2024).

pro hac vice admissions had not been applied for." Docket No. 59 at p.21. That certification was issued by the Puerto Rico Supreme Court on June 20, 2018, and stated that while the records did not show that Defendant Klayman requested admission by courtesy to represent the Castillo Plaintiffs in the FINRA case, Defendant Toskes, through attorney Osvaldo Carlo Linares, did so as to the Jiménez Plaintiffs via informative motion on July 23, 2015. *See* Docket No. 58-3. It was at that precise moment, according to their own admission in their opposition, that the Castillo Plaintiffs, as well as the Jiménez Plaintiffs, were put on notice of the unlicensed status of Defendants.[8] The clock started ticking then, yet Plaintiffs filed their complaint on September 16, 2024, more than five years later. Therefore, I find that Plaintiffs' fraud (count I), tort (count III), unjust enrichment (count IV), and duty to act in good faith (count V) claims, which are subject to a one-year statute of limitations, are time-barred. *See Álvarez-Maurás*, 919 F.3d at 628 ("it is well settled in th[e] [First Circuit] that a motion to dismiss may be granted on the basis of an affirmative defense, such as the statute of limitations, as long as the facts establishing the defense are clear on the face of the plaintiff's pleadings).

### b. *Dolo*

Plaintiffs' dolo claim (count II, labeled as a breach of contract claim)[9] fares no better. While a contract exists, i.e., the retainer agreement, the party whose consent was

---

[8] As discussed above, Defendant Toskes requested courtesy admission as to the Jiménez Plaintiffs.

[9] The Court notes that the breach of contract claim (count II) does not identify which clause of the retainer agreement was breached and in turn discusses lost profits, dolo, consideration, and good faith. Based on the forgoing, the undersigned is of the view that there are sufficient grounds in the record to construe that the breach of contract claim is a claim for dolo. *See* Docket No. 48 ¶¶ 135-156.

vitiated has four (4) years from the date of the consummation of the contract to impugn it. P.R. Laws Ann. tit. 31 § 1253; *Huongsten Production Import & Export Co. Ltd. v. Sanco Metals LLC*, 810 F.Supp.2d at 427. "Upon the expiration of the 4-year statute of limitations, the contract is deemed valid for all purposes." *Id*. As per their allegations, the Castillo Plaintiffs signed the retainer agreement in 2015. *See* Docket No. 48 at ¶ 98.[10] The action before this Court was filed nearly ten (10) years after the transaction was completed, when the statute of limitations for filing such a claim had already expired. *García López v. Méndez García*, 102 D.P.R. 383, 393 (1974). I find that the Castillo Plaintiffs' dolo claim is also untimely.

### c. Equitable Tolling: Fraudulent Concealment

Plaintiffs attempt to save their time-barred claims by arguing that the untimely claims warrant the application of the equitable doctrine of fraudulent concealment. Plaintiffs assert that the amended complaint sets forth "facts that are sufficient for the theory [] to apply." Docket No. 59 at pp. 20-21. Plaintiffs posit that "Defendants, by suppressing information, failing to disclose that Defendants were not admitted to practice law in PR and that their advice and settlement offers were artificially and misguided by their scheme and misrepresenting their ability to advice legally and unbiasedly, actively concealed from Plaintiffs[.]" Docket No. 48 at p. 30. As a result, Plaintiffs submit, they "could not have discovered previously that Defendants were benefiting from their illegal conduct and scheme to defraud the Class and to defraud the

---

[10]     The Jiménez Plaintiffs signed the retainer agreement on March 26, 2015. Docket No. 48 at ¶ 80.

17

Puerto Rico Supreme Court by not paying the appropriate pro hac vice $800 fee. There is no way that Plaintiffs and the Class, who are unsophisticated, could have discovered the fraud[.]" *Id.* at p. 31.

The problem with this contention is that, at bottom, the allegations in the amended complaint, "where the specificity needs to be, of fraudulent concealment as a statute of limitations matter[,] are limited to the [] conclusory allegation[s]" at Docket No. 48 ¶¶ 123-124. *Mun. of Bayamón*, 2025 WL 2630671, at *30 (finding that plaintiffs' allegation that defendants "violated the law by concealing and misrepresenting the risks associated with their fossil fuels" was not sufficient for Rule 9(b) or fraudulent concealment to apply); *Humana, Inc. v. Biogen, Inc.*, 666 F.Supp.3d 135, 146 (D. Mass. 2023) ("The complaint … simply alleges in general terms that 'Biogen concealed its arrangements with CDF and TAF' and 'did this while certifying to Humana that it was following federal law.' "); *In re Niaspan Antitrust Litigation*, 42 F. Supp. 3d 735, 748 (E.D. Pa. 2014) (antitrust) ("While plaintiffs do aver that defendants redacted specific dollar amounts in public filings, refused to disclose certain details about their arrangements, and falsely characterized the settlement agreements as procompetitive, these facts, even if true, are insufficient to establish that plaintiffs were actively mislead."). This does not pass Rule 9(b)'s muster.

In any event, even if the allegations were sufficient to establish fraudulent concealment and met the Rule 9(b) standard, fraudulent concealment simply does not apply. As per Plaintiffs' admission in their opposition at Docket No. 59, "any Statute of Limitations term did not accrue until [sic] Supreme Court of Puerto Rico certified that defendants pro hac vice admissions had not been applied for." Docket No. 59 at p.21. As

previously noted, that certification was issued by the SCPR on June 20, 2018. As such, by June 2018, Plaintiffs knew or should have known who to sue and on what basis. "[A]ny possible misrepresentations by Defendants do not change that conclusion" and Puerto Rico law requires due diligence by Plaintiffs. *Mun. of Bayamón*, 2025 WL 2630671, at *31.

### III.  CONCLUSION

In view of the foregoing, I recommend that Defendants' motion to dismiss (Docket No. 51) be GRANTED and that this case be dismissed in its entirety.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days**. Failure to file timely and specific objections is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**

In San Juan, Puerto Rico this 5th day of February, 2026.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE